IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

ATLAS TRAVEL SOLUTIONS, INC.
d/b/a ATS Americas, a Florida profit
corporation,

    Plaintiff,

v.

FREDERIQUE LE COMTE,
an individual,
ALEKXANDER ORFANIDES,
an individual, and
TRAVEL AMERICA, INC.,
a Florida profit corporation,

    Defendants.

_____

## **VERIFIED COMPLAINT**

Plaintiff Atlas Travel Solutions, Inc. ("ATS" or "Plaintiff"), by and through its undersigned counsel, hereby files this Verified Complaint against Defendants Frederique Le Comte a/k/a Frederique Davis ("Le Comte"), Alekxander Orfanides ("Orfanides") and Travel America, Inc. ("Travel America") (collectively, "Defendants"), for temporary and permanent injunctive relief and damages arising from their misappropriation of trade secrets, violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, violations of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 *et seq*., violations of the Florida Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801, *et seq*., breach of fiduciary duty and tortious interference with business relationships and, in support thereof, states as follows:

## **JURISDICTION AND VENUE**

1.  Atlas Travel Solutions, Inc. is, and at all times material hereto was, a Florida profit corporation registered and doing business in Broward County, Florida.

CASE NO.: _____

2.      Defendant Frederique Le Comte is, and at all times material hereto was, an individual residing in Broward County, Florida.

3.      Defendant Alekxander Orfanides is, and at all times material hereto, was an individual residing in Broward County, Florida.

4.      Defendant Travel America is, and at all times material hereto was, a Florida corporation registered and doing business in the State of Florida operating out of Le Comte's home.

5.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action raises claims under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(c). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same operative facts as its federal claim.

6.      Personal jurisdiction is proper in Florida because Defendants Le Comte and Orfanides are citizens of and reside in Florida, and all Defendants operated, conducted, engaged in, or carried on a business or business venture in the state of Florida.

7.      Pursuant to Florida Statutes § 48.193(2), Defendants also are subject to personal jurisdiction in Florida because they committed the tortious acts referenced herein within the State of Florida.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside and operate a business in this district and the events or omissions giving rise to the claims against Defendants occurred and continue to occur in this district.

9.      All conditions precedent to bringing this action have occurred, have been satisfied, or have otherwise been waived.

**BACKGROUND FACTS**
**ATS's Business**

10.     ATS, a division of global firm ATS Group, is a destination management company

specializing in tailor-made tours, special interest groups and tour series with a specific focus on international inbound groups to the United States and Caribbean, primarily from the French and Italian markets.

11.   ATS services clients in nearly every major metropolitan market throughout the United States, and abroad, with its corporate headquarters located in Broward County, Florida.

12.   ATS contracts with the various business clients with which it has a relationship, who may also be parties to similar contracts with competitor travel management companies.

13.   The travel management industry is a highly competitive industry with numerous major participants nationwide, all of which compete with ATS in some or all aspects of its business.

14.   ATS has been a leader in the international travel management industry for 9 years in the United States and nearly 15 years through its parent company in Europe.

15.   ATS's reputation, course of dealing, and history with business clients has led to a level of trust and confidence, which renders a client more likely to hire ATS as opposed to competitor travel management companies.  This goodwill is generated through the relationships developed over the course of time between business clients and the ATS personnel with whom they interact on a regular basis.

16.   ATS counts much of its business from the French market, the market in which Le Comte was responsible for managing contracted projects in the United States.  The majority of clientele from this market come as a result of long-term agreements and difficult negotiations made by ATS's executives and sales team in Europe to make ATS a preferred partner of these client companies.  ATS invests a significant amount of time and money in developing these relationships and assuring the level of quality expected from these clients.

3

CASE NO.: _____

17.     ATS has expended substantial amounts of time, money, and effort to develop its trade secrets and valuable confidential business information provided to its managers to enable them to perform their jobs, including compiling detailed information regarding its clients, prospective clients, destination venues, vendors and suppliers, and it derives independent economic value from this information not being generally known or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

## Le Comte's Employment with ATS

18.     In June 2015, ATS hired Le Comte to work as a Project Manager.  She had zero experience in the travel management industry prior to her hire.

19.     As a Project Manager and ultimately, as the Senior Project Manager for ATS, Le Comte had frequent contact with the clients who retained ATS to manage its travel for medical conferences in France.  She was responsible for, among other things, maintaining ATS's relationships with clients, designing travel itineraries and proposals based on clients' needs and requests, developing and maintaining relationships with ATS's suppliers and vendors, negotiating quotes for supplier related services, preparing proposals for clients related to those services with the sales team, building quotes, selling services, increasing profit margins based on leads she was given, and overseeing the development and operation of the French department, which specifically provides travel management services to ATS's clients in France.

20.     As a Senior Project Manager, Le Comte had frequent contact with ATS's clients and had direct contact with ATS's employees who worked with her and under her supervision.  As such, Le Comte gained inside knowledge regarding ATS's business operations and confidential information.

CASE NO.: _____

21.     Having no prior experience in the travel management industry, through her employment, Le Comte was educated and trained by ATS.  Le Comte gained knowledge of trade secrets and other confidential and proprietary information of ATS, including, but not limited to, information relating to current, former, and prospective clients; methods and types of services preferred by ATS's clients; sales and marketing techniques; confidential, negotiated contract terms and pricing for clients, and financial information relating to ATS's business.

22.     By virtue of her employment, Le Comte was provided the education and training to perform her high-level manager role and granted access to ATS's trade secrets and confidential and proprietary information, including client lists, business strategies, business models, pricing information, and costs, much of which was maintained on ATS's secure, passcode protected CRM system called Monday.com, as well as its SharePoint system.

### Le Comte Created a Competing Company *During* Her Employment With ATS

23.     On or about July 18, 2022, Le Comte voluntarily resigned from her employment with ATS.  She gave two-weeks' notice, and her last day of work was July 31, 2022.

24.     ATS subsequently discovered that one week before announcing her resignation, on July 11, 2022, Le Comte filed Articles of Incorporation for Travel America, Inc.  *See* **Exhibit A**.

25.     Travel America's principal address is listed as 2007 Coral Shores Drive, Fort Lauderdale, Florida 33306.

26.     This also is the address listed for Le Comte as both the President and Registered Agent of Travel America, *and* it is Le Comte's personal home address she provided to ATS.  *See* **Exhibit B**.

### Le Comte and Orfanides Misappropriated ATS's Confidential Information and Trade Secrets *During* Le Comte's Employment With ATS

27.     Shortly after her resignation, ATS discovered that Le Comte had misappropriated

5

CASE NO.: _____

ATS's confidential business and trade secret information maintained on ATS's secure database and SharePoint systems.

28.     Within 1-2 weeks of Travel America's opening, Le Comte started requesting room blocks from ATS's appointed sales manager from a major hotel chain for various groups of ATS clients whom she met and acquired information about during and as a consequence of her employment with ATS.

29.     On August 30, 2022, Le Comte sent a solicitation email to clients and prospective clients of ATS, including at least one prospective client who contacted ATS directly weeks earlier requesting a quote from ATS's sales manager in France.  Le Comte was responsible for working with this prospect to secure the work for ATS,  and upon information and belief, she immediately used the information she acquired at ATS to divert this prospect's and other ATS clients' business to Travel America. *See* **Exhibit C**.

30.     Further investigation revealed that Le Comte did far more than take with her the email and the contact information of ATS clients – **she and Orfanides stole the ATS's entire database**.

31.     On July 18, 2022, approximately 13 days before her final date of work, Le Comte plotted with Orfanides to copy and steal ATS's database, which contains ATS's client, supplier and vendor contact information, decision maker identities, client preferences, leads input by the sales team, project work being handled by project managers, proposals, contracts, financial data, internal processes and other confidential, proprietary business information and Trade Secrets that essentially make up the entirety of ATS's business.

32.     In their text message exchanges, Le Comte admits to having saved ATS's entire database on an external hard drive that she brought to Orfanides  - while still an active employee

6

of ATS - so he could copy it and download the information into Travel America's new database. *See* composite **Exhibit D,** TA000577-578.[1]

33.     That same day, Le Comte asked Orfanides to move an ATS client's file over to the Travel America server – *while* she was at ATS working as an active employee - with the intent of using ATS's trade secret, client contact information to divert business from ATS to Travel America. *See* Exh. D, TA000579.

34.     Two days later, on July 21, 2022 (10 days before her final day of work for ATS), Le Comte notified Orfanides that they already received their first contract for Travel America for ATS client, Florence Garnier,[2] even though Le Comte was sitting in the ATS office working as an active employee of ATS at that time, stealing information, trade secrets and clients, using the ATS information she had at her disposal. *See* Exh. D, TA000597.

35.     Le Comte sought to ensure she took ATS's entire database comprised of every single document and piece of information related to the Company before she left.

36.     Less than 9 days before her last day of work, while she was working at ATS's office, Le Comte wrote to Orfanides that she needed him to create a Travel America SharePoint system using the data she was giving him from ATS's database. *See* Exh. D, TA000629-632.

37.     Le Comte has used and continues to use the confidential information and trade secrets she obtained from ATS in the course of her new business activities for the benefit of herself

---

[1] Defendants stamped these text messages as "Confidential" to avoid them being filed with the Court. Plaintiff will make them available to the Court during the preliminary injunction hearing or sooner by email or hand delivery upon request of the Court.

[2] Florence Garnier is the Director of Operations of a long time client By The Way Travel. ATS has worked on multiple projects with Ms. Garnier over the course of many years, before Le Comte's hire. Le Comte was introduced to Ms. Garnier by ATS and was assigned by ATS to work with Ms. Garnier on By The Way's travel projects.

CASE NO.: _____

and her company Travel America.  She and Orfanides have saved it to their Travel America portal and refer to it when looking for ATS client and supplier data.  *See* Exh. D, TA000748.

38.     The confidential information and trade secrets Le Comte obtained from ATS include, but are not limited to, ATS's client, supplier and vendor contact information, decision maker identities, client preferences, leads input by the sales team, project work being handled by project managers, proposals, contracts, internal processes; methods and types of services preferred by ATS's clients; sales and marketing techniques; negotiated contract terms and financial information relating to the business of ATS.  Such information constitutes valuable non-public, confidential, and trade secret information belonging to ATS (collectively, the "Trade Secrets").

39.     Le Comte has retained and been using ATS's Trade Secrets long after her resignation, and they remain in her, Orfanides' and Travel America's current possession, custody, and control.

40.     For months, Defendants have been using ATS's Trade Secrets to solicit ATS's clients and prospective clients, to the unfair advantage of Le Comte, Orfanides and Travel America, and to the disadvantage of ATS.

41.     Additionally, following her voluntary resignation, ATS discovered that Le Comte intentionally deleted information from ATS's systems and hid information from ATS's project managers related to confirmed client programs in an effort to sabotage ATS's relationships and to divert those business relationships to Travel America.

### ATS's Pre-Suit Request That Le Comte Cease and Desist Using ATS's Confidential Information and Trade Secrets and Return Them

42.     On August 31, 2022, ATS sent a letter to Le Comte demanding that she cease and desist from using its confidential information and Trade Secrets that she took from ATS's secure server, and to immediately return all such information.  *See* composite Exhibit "E."

CASE NO.: _____

43.     Le Comte falsely responded that she was "closing Travel America, Inc," and sent a package back to ATS containing a few hard copy documents purporting to be all ATS documents and data in her possession.  *Id.*   Le Comte's attorney later confirmed that Le Comte has no intention of closing Travel America and her representation that she did so was false.

44.     ATS later learned that Le Comte took and maintained its entire database and SharePoint system, which she has uploaded to Travel America's database and SharePoint system, and has been continuing to use its Trade Secrets to divert business from ATS to Travel America and to tortiously interfere with its contracts with ATS clients.

45.     Le Comte, Orfanides and Travel America have refused to return ATS's confidential information and Trade Secrets and have continued to use them, necessitating the filing of this Complaint.

**Damage to ATS**

46.     As a result of Le Comte's and Orfanides' misappropriation and retention of ATS's confidential information and Trade Secrets, and misrepresentations to ATS regarding their possession of Company property, ATS has suffered damages including loss of its confidential and proprietary business and Trade Secret information, loss of client contracts that Le Comte was working on at ATS which she admittedly has diverted over to Travel America, loss of reputation due to Le Comte's actions of sabotaging and deleting data in ATS's systems to create issues with booked events, and other damages not yet known at this time.

47.     ATS has retained the services of the undersigned counsel to represent it in this matter and is obligated to pay its counsel reasonable attorneys' fees.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE**
**DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)**
**(Against Le Comte, Orfanides and Travel America)**

CASE NO.: _____

48.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1 through 47 of this Verified Complaint, as though fully set forth herein.

49.     The purpose of the Defend Trade Secrets Act ("DTSA"), codified at 18 U.S.C. §§ 1831-1839, is to "equip companies with the ... tools they need to protect their proprietary information ... [so that U. S. companies will] continue to lead the world in creating new and innovative products, technologies, and services." H.R. Rep. No. 114-529, at 6 (2016).

50.     Under 18 U.S.C. § 1836(b), an owner of a trade secret that is misappropriated may bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

51.     Per 18 U.S.C. § 1836(b)(3), the Court may grant remedies of (a) an injunction to prevent actual or threatened misappropriation, (b) an award of damages, (c) an award of exemplary damages if the trade secret was willfully and maliciously misappropriated, and (d) an award of attorneys' fees if the trade secret was willfully and maliciously misappropriated.

52.     The misappropriated trade secrets at issue are ATS's Trade Secrets.

53.     The Trade Secrets are directly related to services used in, or intended for use in, interstate or foreign commerce.

54.     ATS is the "owner" of the Trade Secrets stolen by Le Comte and Orfanides under 18 U.S.C. § 1839(4) because it is the entity in which rightful legal or equitable title to, or license in, the Trade Secrets are reposed.

55.     The Trade Secrets constitute a "trade secret" under 18 U.S.C. § 1839(3) because they are a form of financial, business, scientific, technical, economic, and/or engineering information; ATS has taken reasonable measures to keep such information secret; and the information derives independent economic value, actual or potential, from not being generally

CASE NO.: _____

known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

56.     The Trade Secrets were misappropriated by Le Comte and Orfanides under 18 U.S.C. § 1839(5)(A) because they acquired them through improper means, namely outright and flagrant theft and breach of Le Comte's duty to maintain their secrecy.

57.     The Trade Secrets also were misappropriated by Le Comte and Orfanides under 18 U.S.C. § 1839(5)(B) because they used improper means to acquire the Trade Secrets (namely theft).

58.     ATS has suffered substantial economic loss as a direct and proximate result of Le Comte's and Orfanides' violations of the DTSA alleged herein. ATS is entitled to an award of actual damages from Defendants, plus exemplary damages of up to two times actual damages, plus attorney's fees and costs.

59.     Le Comte, Orfanides and Travel America have been unjustly enriched by profiting from their misappropriation, use, and disclosure of ATS's Trade Secrets. ATS is entitled to imposition of a constructive trust requiring Le Comte, Orfanides and Travel America to disgorge to ATS any amounts it has received or benefitted through their violations of the DTSA.

60.     For all these reasons, ATS is entitled to bring a civil action under DTSA for misappropriation of trade secrets.

WHEREFORE, ATS demands the following:

(a)     injunctive relief preventing Le Comte and Orfanides and any person to whom they disclosed the Trade Secrets to from utilizing ATS's Trade Secrets, and requiring the disgorgement and immediate return of all Trade Secrets of ATS in their possession, custody, or control;

11

CASE NO.: _____

(b)     an order mandating that Le Comte and Orfanides turn over their personal email accounts, cloud storage accounts, smart phones, tablets, IPads, desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like, as well as Travel America's cloud storage accounts (including its portal and Sharepoint system), desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like to an agreed upon third-party forensic expert for imaging, searching and wiping of ATS's Trade Secrets;

(c)     an order requiring independent verification that none of ATS's Trade Secrets remain in the possession, custody, or control of Le Comte, Orfanides or any individuals and entities with which they are associated;

(d)     actual damages flowing from Le Comte's and Orfanides's misappropriation of ATS's Trade Secrets;

(e)     an order requiring Le Comte and Orfanides to return the ATS data and other documents and materials they took as well as destroy all information regarding ATS and its clients in their possession, custody, or control through the third-party forensic expert;

(f)     attorneys' fees and costs incurred by ATS in bringing this action; and

(g)     all other remedies available at law or in equity as this Court deems just and appropriate.

CASE NO.: _____

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS/VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (Fla. Stat. § 688.001, *et seq.*)

### (Against Le Comte, Orfanides and Travel America)

61.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1 through 47 of this Verified Complaint as though fully set forth herein.

62.     ATS possesses Trade Secrets, which include non-public information relating to current, former, and prospective clients; methods and types of services preferred by ATS's clients; sales and marketing techniques; negotiated contract terms and pricing, and financial information relating to ATS's business.

63.     These Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public and not being readily ascertainable by proper means by the public or any other person who may obtain commercial or economic value from the disclosure of such information.

64.     ATS has made reasonable efforts under the circumstances to maintain the secrecy of such confidential and proprietary information and Trade Secrets by taking steps to protect it. These efforts include, but are not limited to, promulgation and publication of a Confidentiality Policy, locked file cabinets, and passcode protection on the CRM Monday.com database (which has different levels of access for the various positions it employs) its email systems and SharePoint system, both of which also are passcode protected.

65.     Le Comte and Orfanides intentionally misappropriated ATS's Trade Secrets without the knowledge or consent of ATS and with the purpose of utilizing them for their own benefit and/or the benefit of their new company, Travel America.

13

CASE NO.: _____

66.     Le Comte and Orfanides knew that ATS's Trade Secrets were the property of ATS and that such property constituted confidential Trade Secrets, that Le Comte had a duty to ATS and a common law obligation to maintain their secrecy or limit their use, and that she and Orfanides were not permitted to remove, utilize, or disclose the Trade Secrets.  Le Comte's and Orfanides' actions, therefore, were willful and malicious.

67.     Le Comte and Orfanides utilized ATS's Trade Secrets for personal gain and/or for the benefit of Travel America.

68.     Le Comte's and Orfanides' actions constitute misappropriation of ATS's Trade Secrets.

69.     Le Comte and Orfanides, and their business Travel America, have been unjustly enriched by their unlawful use of ATS's Trade Secrets, and ATS is entitled to damages including, but not limited to, loss of profits due to Le Comte's, Orfanides' and Travel America's unlawful use of the Trade Secrets to divert business from ATS to Travel America and disgorgement and the immediate return of all ATS Trade Secrets in their possession, custody, or control.

70.     Le Comte's and Orfanides' actions were taken in willful, wanton, and/or reckless disregard of ATS's rights and warrant the imposition of exemplary damages.

WHEREFORE, ATS demands the following:

(a) injunctive relief preventing Le Comte and Orfanides from utilizing ATS's confidential and proprietary information and Trade Secrets, and requiring the disgorgement and immediate return of all of ATS's confidential information and Trade Secrets in Le Comte's and/or Orfanides' possession, custody, or control;

(b)  an order mandating that Le Comte and Orfanides turn over their personal email

CASE NO.: _____

accounts, cloud storage accounts, smart phones, tablets, IPads, desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like, as well as Travel America's cloud storage accounts (including its portal and Sharepoint system), desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like to an agreed upon third-party forensic expert for imaging, searching and wiping of ATS's Trade Secrets;

(c)     an order requiring independent verification that none of ATS's Trade Secrets remain in the possession, custody, or control of Le Comte, Orfanides or any individuals and entities with which they are associated;

(d)     attorneys' fees and costs incurred in bringing this action pursuant to applicable statutes including, but not limited to, Fla. Stat. § 688.005;

(e)     actual damages flowing from Le Comte's and Orfanides 'misappropriation of ATS's Trade Secrets; and

(f)     all other remedies available at law or in equity as this Court deems just and appropriate.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(against Le Comte)**

71.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1 through 47 of this Verified Complaint as though fully set forth herein.

72.     Pursuant to her relationship as a Senior Manager with ATS, Le Comte was under a fiduciary duty to act in the best interests of ATS, safeguard and protect ATS's confidential and proprietary business and Trade Secret information, and devote her full time and energy to ATS's

CASE NO.: _____

business.

73.      By virtue of, *inter alia*, misappropriating ATS's Trade Secrets, using the stolen Trade Secrets to divert clients and contracts to Travel America, and misrepresenting that she was not in possession of any of ATS's property after returning a handful of hard copy papers (and claiming she was closing Travel America), Le Comte breached her fiduciary duty to ATS.

74.      Additionally, by willfully attempting to sabotage confirmed programs for ATS clients by deleting information and hiding information from ATS's project managers in the days leading up to her departure, Le Comte breached her fiduciary duty to ATS.

75.      Additionally, by virtue of, *inter alia*, working for and, in fact, creating, ATS's direct competitor, Travel America, *during* her employment with ATS, and diverting business to Travel America *during* her employment with ATS, Le Comte breached her fiduciary duty to ATS.

76.      As a direct and proximate result of Le Comte's breach of her fiduciary duty, ATS has suffered and will continue to suffer damages in an amount to be determined at trial.

77.      Le Comte's actions were willful and intentional, entitling ATS to punitive damages upon appropriate motion.

78.      ATS has been required to retain legal counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs.

WHEREFORE, ATS demands the following:

(a) injunctive relief preventing Le Comte from utilizing ATS's confidential, proprietary information and Trade Secrets, and requiring the disgorgement and immediate return of all of ATS's confidential, proprietary information and Trade Secrets in her possession, custody, or control;

(b) actual damages flowing from Le Comte's breach of fiduciary duty, including

16

CASE NO.: _____

her intentional deletion of information related to confirmed client programs from ATS's systems and intentional mishandling of ATS files prior to her departure to ensure that confirmed groups would have reason to want to join her at Travel America; and

(c) all other remedies available at law or in equity as this Court deems just and appropriate.

**COUNT IV**
**STATUTORY CLAIM UNDER FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT (CADRA)**
**(against Le Comte and Orfanides)**

79.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1 through 47 of this Verified Complaint as though fully set forth herein.

80.     Le Comte and Orfanides knowingly, and with intent to cause harm to ATS, took ATS's information relating to, *inter alia*, to current and prospective clients, suppliers and vendors, their personal, private contact information, methods and types of services preferred by ATS's clients; sales and marketing techniques; financial information relating to the business of ATS; and other confidential, proprietary information and Trade Secrets belonging to ATS by downloading ATS's entire database to an external hard drive, exporting client, vendor and supplier emails and information from ATS's SharePoint system to their personal emails and/or Travel America's SharePoint system, then uploading the information to their personal and/or Travel America's portal, email cloud storage accounts, and SharePoint system, constituting ATS's confidential information and Trade Secrets, without ATS's knowledge or consent and by retaining ATS's data.

81.     Le Comte and Orfanides (after being given access by Le Comte) took this information from one or more password protected servers at ATS, after ATS put reasonable measures in place to restrict access to its computer data.

17

CASE NO.: _____

82.    In improperly downloading and exporting ATS's data to her, his and/or Travel America's personal cloud storage accounts and external hard drive, and retaining ATS's data, Le Comte and Orfanides acted improperly and without authorization.  Specifically, Le Comte was granted access to ATS's confidential information and Trade Secrets solely for use for ATS's business and solely while using the secure platforms provided by ATS.  Le Comte's access of the confidential information and Trade Secrets, and her granting such access to Orfanides, was outside of those bounds and was not authorized.

83.    Orfanides was not an employee of ATS and was not authorized to access ATS's database.

84.    Orfanides' accessing and retention of ATS's confidential information and Trade Secrets through the avenues given to him by Le Comte was unlawful and not authorized.

85.    As a direct and proximate result of Le Comte's and Orfanides' conduct, ATS has suffered and will continue to suffer damages in an amount to be determined at trial.

86.    Le Comte's and Orfanides' actions were willful and intentional, entitling ATS to punitive damages upon appropriate motion.

87.    CADRA permits ATS to recover damages and obtain other remedies for Le Comte's and Orfanides' improper conduct.

88.    ATS has been required to retain an attorney to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs.

WHEREFORE, ATS demands the following:

(a)    injunctive relief preventing Le Comte and Orfanides and any individuals and entities with which they are associated (such as Travel America) from utilizing ATS's confidential information and Trade Secrets, and requiring

CASE NO.: _____

the disgorgement and immediate return of all confidential information and

Trade Secrets of ATS in any of their possessions, custody, or control;

(b)     injunctive relief in the form of independent verification that none of ATS's

Confidential Information or Trade Secrets remains in the possession,

custody, or control of Le Comte, Orfanides, Travel America and/or any

individuals and entities with which they are  associated;

(c)     actual damages flowing from Le Comte's and Orfanides' violation of

CADRA; and

(d)     all other remedies available at law or in equity as this Court deems just and

appropriate.

**COUNT V**
**INJUNCTIVE RELIEF**
**(against Le Comte, Orfanides  and Travel America)**

89.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1

through 47 of this Verified Complaint as though fully set forth herein.

90.     If not enjoined, Le Comte, Orfanides and Travel America will continue to use and

disclose ATS's confidential information and Trade Secrets they stole to undermine ATS in the

industry, to cause ATS to sustain reputational harm, and to cause ATS the ongoing loss of its Trade

Secrets, which will result in irreparable harm to ATS for which monetary damages would be an

inadequate remedy.

91.     Accordingly, ATS seeks an order enjoining Le Comte, Orfanides, and Travel

America from continuing to use, transfer and/or disclose ATS's confidential information and Trade

Secrets.

92.     ATS also seeks an order requiring Le Comte, Orfanides and Travel America to

CASE NO.: _____

immediately return to ATS all of ATS's property in their possession, custody, or control, including but not limited to its Trade Secrets and confidential information.

WHEREFORE, ATS demands the following:

(a)     injunctive relief enjoining Le Comte from directly or indirectly transferring, using, or disclosing ATS's confidential information and Trade Secrets to Travel America and any other third parties;

(b)     injunctive relief enjoining Orfanides from directly or indirectly transferring, using, or disclosing ATS's confidential information and Trade Secrets to Travel America and any other third parties;

(c)     injunctive relief enjoining Travel America from using ATS's confidential information and Trade Secrets it has obtained through its employment of Le Comte;

(d)     an order mandating that Le Comte and Orfanides turn over their personal email accounts, cloud storage accounts, smart phones, tablets, IPads, desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like, as well as Travel America's cloud storage accounts (including its portal and Sharepoint system), desktop computers, laptop computers, and disks, memory files, flash drives, hard drives, and the like to an agreed upon third-party forensic expert for imaging, searching and wiping of ATS's Trade Secrets;

(e)     an order requiring independent verification by the agreed upon third-party forensic expert that none of ATS's Trade Secrets remain in the possession, custody, or control of Le Comte, Orfanides or any individuals and entities

20

CASE NO.: _____

with which they are associated; and

(f)     all other remedies available at law or in equity as this Court deems just and

appropriate.

**COUNT VI**
**TORTIOUS INTERFERENCE**
**WITH CLIENT RELATIONSHIPS**
**(against Le Comte, Orfanides and Travel America)**

93.     ATS repeats and reasserts each and every allegation contained in Paragraphs 1

through 47 of this Verified Complaint as though fully set forth herein.

94.     In her position of Senior Project Manager with ATS, Le Comte learned of the

existence, negotiated rates, services and other terms of the contracts ATS entered into with its

clients, which she disclosed to Orfanides and Travel America.

95.     Le Comte, Orfanides and Travel America have been using the information Le

Comte acquired at and misappropriated from ATS to induce ATS's clients to end their business

relationship with ATS and instead to use Le Comte's and Orfanides' business, Travel America,

for the provision of the same services.

96.     In fact, *during* her employment with ATS, Le Comte, with the assistance of

Orfanides, interfered with contracts with ATS's clients and effectively diverted them to Travel

America *while* she was still an active employee of ATS, resulting in the ATS clients either

believing they were contracting with ATS or intentionally cancelling their contracts with ATS and

instead contracting with Travel America through Le Comte.

97.     ATS has suffered damages as a result of Le Comte's and Travel America's

unjustified interference.

WHEREFORE, ATS demands the following:

(a)     injunctive relief preventing Le Comte and Orfanides from continuing to

CASE NO.: _____

interfere with ATS's contractual relationships with its clients;

(b)     injunctive relief preventing Travel America from continuing to interfere with ATS's contractual relationships with its clients;

(c)     actual damages flowing from the tortious interference, including disgorgement of all profits Defendants received from ATS's clients as a result of their tortious interference with ATS contracts and client relationships; and

(d)     all other remedies available at law or in equity as this Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, ATS respectfully requests that the Court enter judgment in its favor and against Le Comte, Orfanides and Travel America as follows:

A.      Injunctive relief (including a preliminary injunction and permanent injunction) against Le Comte, Orfanides and Travel America (i) enjoining them from retaining, using and/or disclosing ATS's confidential information and Trade Secrets they took; (ii) directing them to return to ATS's confidential information and Trade Secrets in whatever form in which they exist in their possession; (iii) mandating that they turn over their cloud storage account emails, passcodes, computers, tablets, smart phones, hard drives and other electronic storage devices to an agreed upon third-party expert for imaging, searching and wiping of all of ATS's confidential information and Trade Secrets in their possession; (iv) requiring Le Comte, Orfanides and Travel America to identify all copies and all transfers of the confidential information and Trade Secrets, including the identity of any third party to whom they provided the confidential information and Trade Secrets or a copy thereof or access thereto; and (v) enjoining Le Comte, Orfanides and Travel America from contacting, communicating with and/or soliciting business from ATS's clients and prospective clients about whom they learned or acquired information as a result of Le Comte's former position with ATS.

B.      An award of monetary damages in an amount to be determined at trial, including but not limited to the disgorgement of all profits Defendants were and/or will be paid by ATS clients as a result of their tortious interference with ATS contracts and ATS client relationships.

C.      An award of exemplary damages.

CASE NO.: _____

D.      An award of attorneys' fees.

E.      An award of ATS's costs and expenses of this suit.

F.      Such other and further relief that the Court deems just and proper.

Dated: December 30, 2022

                              Respectfully submitted,

                              By: *s/ Jennifer A. Schwartz*
                                  Jennifer A. Schwartz, Esq.
                                  Florida Bar No. 502431
                                  Email: *jennifer.schwartz@jacksonlewis.com*
                                  Adam Schultz, Esq.
                                  Florida Bar No. 121111
                                  Email: *adam.schultz@jacksonlewis.com*
                                  **JACKSON LEWIS P.C.**
                                  One Biscayne Tower, Suite 2500
                                  Two South Biscayne Boulevard
                                  Miami, Florida  33131
                                  Telephone:  (305) 577-7600
                                  Facsimile:  (305) 373-446

                                  *Counsel for the Plaintiff*
                                  *Atlas Travel Solutions, Inc.*

## **VERIFICATION**

Pursuant to 28 U.S. Code § 1746, I declare under penalties of perjury that I am the Chief Executive Officer of Atlas Travel Solutions, Inc., that I have read the foregoing Verified Complaint, and that the facts stated in it are true and correct to the best of my knowledge and belief.

_____
    Eli Gorin, CEO